IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JOYCE SHEPHERD                                               PLAINTIFF

V.                                   NO. 09-5107

MICHAEL J. ASTRUE,
Commissioner of Social Security                            DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Joyce Shepherd, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB) under Title II of the Social Security Act (the Act) and Supplemental Security Income (SSI) under Title XVI of the Act.  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  See 42 U.S.C. §405(g).

## Procedural Background

Plaintiff filed her applications for DIB and SSI on February 28, 2005, alleging disability since September 1, 2004.[1]  (Tr. 36-38, 190-195).  Plaintiff's applications were denied initially and upon reconsideration.  (Tr. 26, 28-30, 196-199).  Pursuant to Plaintiff's request, a hearing was held before an Administrative Law Judge (ALJ) on January 19, 2007, where Plaintiff and

---

[1]The onset date was amended at the hearing to November 19, 2004.  (Tr. 246).

AO72A
(Rev. 8/82)

a Vocational Expert (VE) appeared and testified.  (Tr. 203-255 ).  On May 21, 2007, the ALJ entered his decision, denying Plaintiff's request for a determination of disability. (Tr. 8-19).  The ALJ found that Plaintiff had the following severe impairments: chronic back pain; exogenous obesity; non-insulin dependent diabetes mellitus; and chronic pain of neck, shoulders, and knees, secondary to degenerative joint disease. (Tr. 13)  However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments, and after careful consideration of the entire record, found that Plaintiff had the residual functional capacity (RFC) to perform light work[2] with certain limitations.  More specifically, the ALJ found that Plaintiff could stand/walk/sit for 6 hours out of an 8-hour workday;  should avoid walking/working on a vibrating surface;  should do no overhead reaching;  and could occasionally climb steps/ramps, stoop, bend, crouch, and balance, but never crawl or kneel or climb ladders/scaffolds/ropes.  He also found that she should avoid exposure to unprotected heights, dangerous machinery, and equipment.  (Tr. 16 ).  He found, with the assistance of the VE, that Plaintiff would be able to perform past relevant work as a delicatessen slicer and board assembler.  (Tr. 18).  Plaintiff's request for  review was denied by the Appeals Council on May 19, 2009, and the decision of the ALJ therefore became the final decision of the Commissioner.  (Tr. 2-4).

**Evidence Presented**

Plaintiff was born in 1955 and completed the 12th grade.  (Tr. 208).  She previously

---

[2]Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. 20 C.F.R. §416.967(b).

-2-

worked in line production as a food tray worker at Tyson, for a piano company as a board assembler and hand packager, at a ceramic company dipping buckets of angel heads in rust oxide, at a nursing home feeding and bathing patients, as a babysitter, and as a delicatessen slicer at Wal-Mart.  (Tr. 208-228).

On July 14, 1996, Plaintiff was involved in a motor vehicle accident, and she alleged that it gave her whiplash and did damage to her back and shoulder.  (Tr. 64).  The conclusion reached from an x-ray of her spine was "no acute fracture or subluxation demonstrated of the cervical spine."  (Tr. 188).  On July 17, 1996, Plaintiff was seen at the Ozark Orthopaedic and Sports Medicine Clinic, Ltd., reporting that she felt like her whole spine had been stretched.  (Tr. 181). On July 29, 1996, an x-ray of Plaintiff's lumbar spine was taken.  The findings suggested a small anterior compression fracture involving the superior end plate of the L-4 body.  (Tr. 125).  This was believed to represent a small fracture.  A bone scan revealed no evidence of acute injury, and prominent uptake related to the right pelvicalyceal structures.[3]  An obstructing lesion at the ureteropelvic junction could not be entirely ruled out.  (Tr. 189).  By July 31, 1996, Plaintiff reported to the Ozark Orthopaedic and Sports Medicine Clinic, Ltd., that she was only sore in the "T.L. area."  (Tr. 182).  On September 11, 1996, Plaintiff received an injection in her right shoulder joint from Ozark Orthopaedic and Sports Medicine Clinic, Ltd., with good relief of pain.  (Tr. 183).  On September 25, 1996, the same clinic reported that she was only tender on her left scapulae and all other pain was gone.  The notation on the record indicated that the right shoulder injection was very helpful and her left shoulder was still a problem.  (Tr. 184).

---

[3]Pyelocalyceal - pertaining to the renal pelvis and calices; spelled also pyelocaliceal.  Called also pelvicalyceal and pelvocalyceal.  Dorland's Illustrated Medical Dictionary 1582 (31st ed. 2007).

Plaintiff did not seek medical treatment for any condition thereafter until October 6, 2004, when she visited the Northwest Arkansas Free Health Clinic (Free Health Clinic), complaining of a rash under her breast and left knee pain, with the pain running up and down her leg. (Tr. 138). On October 7, 2004, an x-ray of her right knee was taken, which revealed no fracture or dislocation. (Tr. 137). A few vascular calcifications were noted in the region of the distal left superficial femoral artery. (Tr. 137). On November 18, 2004, Plaintiff was assessed by the Free Health Clinic as having mild degenerative joint disease (DJD), and on January 20, 2005, she was assessed by the Free Health Clinic with diabetes mellitus (DM) and dyslipidemia.[4] (Tr. 134, 136). On March 17, 2005, the Free Health Clinic assessed Plaintiff as having DM; HTN (hypertension); DJD; Low HDL; and her LDL was at goal. (Tr. 131).

On May 12, 2005, a general physical examination was conducted by Dr. Tad Morgan at the request of the Social Security Administration. (Tr. 106-112). At that time, Plaintiff was taking Atenolol, HCTZ, Lipitor and Metformin. (Tr. 106). She was measured as 5'4 3/4"tall, and weighed 243 pounds. (Tr. 108). She was found to have normal range of motion in her spine and extremities, and reported as having pain in her neck, shoulders and both knees, with any movement. (Tr. 109-110). She walked as if her lower back was "stiff." (Tr. 110). She could hold a pen and write, touch her fingertips to her palm, had 100% grip, could oppose her thumb to her fingers, pick up a coin, stand and walk without assistive devices, and walk on her heel and toes. (Tr. 110). She could only partially squat, and had to stop because of the knee pain and weakness in her upper legs. (Tr. 110). Dr. Morgan diagnosed Plaintiff with: DDD(degenerative

---

[4]Dyslipidemia - abnormality in, or abnormal amounts of, lipids and lipoproteins in the blood. Dorland's Illustrated Medical Dictionary 586 (31st ed. 2007).

-4-

disc disease)(by history); NIDDM (non-insulin dependent diabetes mellitus)(by history); Hypertension; Hyperlipidemia;[5] and Exogenous Obesity. (Tr. 112). He also found that Plaintiff had mild limitation in her ability to walk, stand, lift and carry.

On May 17, 2005, a Physical Residual Functional Capacity (RFC) Assessment was completed by Dr. Robert Redd. (Tr. 140-147). Dr. Redd found that Plaintiff could occasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds; stand and/or walk about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; and push and/or pull in an unlimited fashion. (Tr. 141). He further found that Plaintiff had no postural, manipulative, visual, communicative, or environmental limitations. (Tr. 142-144).

On July 5, 2005, Plaintiff presented herself to Washington Regional Medical Center for evaluation of right and lower back injury, back pain, and back tenderness. (Tr. 117). The diagnosis was lumbar strain. (Tr. 119). She was told to return to the medical center if her pain did not improve. (Tr. 114). On July 7, 2005, Plaintiff went to the Free Health Clinic, which reported that Plaintiff's diabetes mellitus goal was met, her hypertension was at goal, and that she should continue her diet and exercise. (Tr. 126). On July 14, 2005, Plaintiff returned to Washington Regional Medical Center, stating that her pain was not as bad and that she was able to move, but that she had trouble if she sat for a long period of time. She also complained of numbness to her arms. Her gait, motor exam, sensory exam, cranial nerve exam and cerebellar exam were normal. (Tr. 115). The diagnosis was sciatica and back strain. (Tr. 116).

Plaintiff came down with shingles in October of 2005, but medication resulted in

---

[5]Hyperlipidemia - a general term for elevated concentrations of any or all of the lipids in the plasma, such as hypertriglyceridemia, hypercholesterolemia, and so on. Dorland's Illustrated Medical Dictionary 903 (31st ed. 2007).

AO72A
(Rev. 8/82)

noticeable improvement.  (Tr. 160).  By December 21, 2005, her shingles were resolved, her blood sugar was normalized, she had lost twenty pounds, and she was able to stop Metformin, her medication for diabetes. (Tr. 159).  On May 24, 2006, Plaintiff went to the Free Health Clinic feeling lightheaded, dizzy and fatigued.  (Tr. 153).  She was told to restart her Lipitor.  (Tr. 153).

In her Function Report dated March 21, 2005, Plaintiff stated that on a daily basis, she would drink coffee and eat breakfast from 7am to 9 am, do the dishes, put laundry in to wash, check her mail, fix lunch and after that, just rest and watch television.  (Tr. 57).  She reported that she did not do yard work because it was too hard for her.  (Tr. 60).  She stated that she needed to nap for one hour every day, had a constant ache and stiff feeling, and that her pain was located in her neck, back, hips, shoulder, and joints.   (Tr. 65).

At the hearing before the ALJ on January 19, 2007, Plaintiff stated that she had trouble with both knees, could walk about 50 yards without having to rest because she felt out of breath and tired, and that climbing stairs did the same thing to her. (Tr. 231).  She stated that her knees would not bend to climb a ladder and that she could not crawl or get down on her knees.  (Tr. 232).  She stated that she had trouble putting her shoes and socks on.  (Tr. 233).  Both of her knees were stiff at times, and she took Ibuprofen on a regular basis to help with the pain.  (Tr. 234).  She stated that she could probably stand for 15-20 minutes and went to church on Sundays.  (Tr. 234).  She testified that her hands were really stiff, that she did some sweeping and loading the washing machine, and shopped for groceries.  (Tr. 237).  She stated that the only pain medicine she used was Ibuprofen because it was the only one that did her any good, and that she was allergic to a lot of different pain medications.  (Tr. 242).  She also stated that she did not have to take Ibuprofen every day, and could go probably two or three days without taking it.  (Tr.

-6-

251).

**Applicable Law**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for

-7-

at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience.  See 20 C.F.R. §416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity (RFC).  See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920.

**Discussion**

**A.  Plaintiff's Impairments**

The ALJ found that Plaintiff had the following severe impairments: chronic back pain; exogenous obesity; non-insulin dependent diabetes mellitus; and chronic pain of neck, shoulders, and knees, secondary to DJD.  However, he further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. He considered the listed impairments related to the musculoskeletal system found in section 1.00 and the endocrine system found in section 9.00, and concluded that Plaintiff's severe impairments were not of such severity, either singly or in combination, to meet one of the listed impairments.  Considering the record as a whole, and reviewing Listings 1.00 and 9.00,  the Court believes there is substantial evidence to support the ALJ's conclusion that Plaintiff did not

-8-

have an impairment or combination of impairments that met or medically equaled a listed impairment.

**B. Plaintiff's Credibility**

The ALJ stated that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible, and gave careful consideration to all of the relevant factors in making this determination. In Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir.1984) , the Eighth Circuit Court of Appeals stated that the ALJ may discredit subjective complaints of pain if there are inconsistencies in the evidence as a whole. Id. The factors the ALJ is to consider when determining if Plaintiff's complaints of pain are credible include:  the absence of an objective medical basis that supports the severity of the subjective complaints; Plaintiff's daily activities;  the duration, frequency and intensity of Plaintiff's pain;  precipitating and aggravating factors;  the dosage, effectiveness and side effects of medication;  and functional restrictions.  Id.  If the ALJ discredits testimony and explicitly gives good reasons for doing so, the Court is bound by the ALJ's judgment unless it is not supported by substantial evidence on the record as a whole.  Robinson v. Sullivan,  956 F.2d 836, 841 ( 8th Cir. 1992);  see also Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008);  Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007).

The ALJ noted that although Plaintiff's condition was as a result of a motor vehicle accident in 1996, Plaintiff did not seek medical treatment after 1996 for her alleged persistent pain until October of 2004.  Although Plaintiff alleged that she did not seek treatment because she could not afford to go to the doctor, the records reflect that Plaintiff sought treatment at the Free Health Clinic in October of 2004 and thereafter.  Furthermore, the records reflect that

-9-

Plaintiff received relief for her pain from taking the over-the-counter medication - Ibuprofen - and she testified that she did not even have to take that every day.  This alone defies Plaintiff's allegations of constant pain.  See Hepp v. Astrue, 511 F.3d 798, 807 (8th Cir. 2008).  The records also indicate that Plaintiff's diabetes mellitus, hypertension and hyperlipidemia were also controlled by medication.  See Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) (holding that an impairment which can be controlled by medication is not considered disabling).

Plaintiff's daily activities are also inconsistent with allegations of disabling pain.  Although Plaintiff may have some limitations and discomfort, she has been able to perform numerous daily activities, such as shopping for groceries, doing laundry, preparing meals, going to church regularly, and sweeping the floors.

The Court believes the ALJ considered all of the relevant factors required in Polaski and gave good reasons for discrediting Plaintiff's allegations of pain.

### C.  Residual Functional Capacity

The ALJ found that Plaintiff had the RFC to perform a wide range of light exertional level activities.  More specifically, he found that Plaintiff could:

> lift and carry 10 pounds frequently and 20 pounds occasionally; stand/walk/sit for 6 hours out of an 8-hour workday; should avoid walking/working on a vibrating surface; should do no overhead reaching; could occasionally climb steps/ramps, stoop, bend, crouch, and balance but never crawl or kneel or climb ladders/scaffolds/ropes.  She should also avoid exposure to unprotected heights, dangerous machinery, and equipment.

Although the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence," the Eighth Circuit Court of Appeals has also stated that a "claimant's residual functional capacity is a medical question."  Baldwin v. Barnhart, 349 F.3d 549, 556 (8th Cir. 2003), quoting from Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000); Lauer

-10-

v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).  Some medical evidence must support the

determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses

the claimant's ability to function physically in the workplace.  Nevland v. Apfel, 204 F.3d 853,

858 (8th Cir. 2000).   In the present case, Dr. Robert Redd found that Plaintiff was able to

occasionally lift and/or carry 50 pounds and frequently lift and or carry 25 pounds, stand and/or

walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and push

and/or pull in an unlimited fashion.  He also found no postural, manipulative, visual,

communicative or environmental limitations.  Dr. Tad Morgan, who performed a physical

examination on Plaintiff, found Plaintiff's only limitation was that she had "mild" limitation in

her ability to walk, stand, lift and carry, and could only partially squat and had to stop because

of knee pain.  He also found her to walk not fully erect, as if she was stiff.  The ALJ considered

the medical assessments of the examining agency medical consultant, the non-examining

consultant, the medical records from the various physicians seen by Plaintiff, and Plaintiff's

subjective complaints.  Plaintiff's capacity to perform this light level of work is supported by the

fact that Plaintiff's treating and examining physicians placed no restrictions on her activities that

would preclude performing the RFC determined.  See Hutton v. Apfel, 175 F.3d 651, 655 (8th

Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability).

Based on the record as a whole, the Court finds substantial evidence to support the ALJ's RFC

determination.

### D.  Hypothetical Question Proposed to Vocational Expert

The ALJ proposed the following hypothetical question to the VE:

Let's assume the claimant has demonstrated an ability to perform work at the light

-11-

exertional level.  That is to lift and carry occasionally 20 pounds, frequently 10.  Able to
sit six out of eight hours, stand and/or walk six out of eight hours.  She's not going to be
able to reach overhead.  She should avoid climbing scaffolds, ladders or ropes.  She
should avoid work at unprotected heights or around dangerous equipment or machinery.
She can occasionally climb ramps or stairs. Occasionally stoop and bend and crouch.  No
crawling, no kneeling, and occasionally balance.  She should avoid ... walking and
working where she's going to have to stand on a vibrating work surface.  With that RFC
would she be able to return to any of her past relevant work?

In response to the hypothetical, the VE stated that the individual would be able to perform past

work as a delicatessen slicer and board assembler.  The ALJ then followed up with a second

hypothetical:

Let's assume an individual – a hypothetical individual of the same age, education and
work experience as the claimant with the same RFC but this time we're going to add that
due to pain, fatigue our hypothetical individual would need to stop and rest additionally
throughout the workday once in the a.m. 15 minutes and one time in the afternoon of 15
minutes.  This is in addition to the regular meal break, coffee breaks.  Would that have
any effect on the ability to do the past relevant work we've talked about?

The VE responded by saying that it would effect Plaintiff's ability to do past relevant work

because it would  require an employer accommodation in order for her to be able to do that.  The

ALJ then asked the VE whether there would be any other work in a competitive work

environment, to which the VE responded that the employer would be required to accommodate

outside of what is considered typical breaks for any job at any strength level.

Plaintiff contends that the ALJ did not include all of Plaintiff's impairments, limitations,

and restrictions in the hypothetical questions posed to the VE.  She contends that there was an

absence of any express reference to Plaintiff's chronic back pain; exogenous obesity; non-insulin

dependent diabetes mellitus; or her chronic pain of neck, shoulders, and knees, secondary to

degenerative joint disease.  The ALJ is only required to set forth the impairments which she

accepted as true and which were supported by the record as a whole.  Howe v. Astrue, 499 F.3d

-12-

835, 842 (8th Cir. 2007);  see Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005).

As stated earlier, Plaintiff's pain and diabetes mellitus were controlled by medication. With respect to Plaintiff's exogenous obesity,  the ALJ did not err in failing to consider Plaintiff's weight as an impairment, as Plaintiff did not allege obesity in her application or testify about limitations resulting from her weight.  Nor did Plaintiff explain how including her obesity would change the question to the VE.  Davis v. Barnhart, 197 Fed. Appx. 521, 522, 2006 WL 2993411, *1 (8th Cir. 2006) (holding that the ALJ did not err in failing to consider Davis' weight as an impairment, as she did not allege obesity in her application or testify about limitations resulting from her weight);  See Anderson v. Barnhart, 344 F.3d 809, 814 (8th Cir.2003) (claim of obesity impairment waived on appeal where claimant did not raise any limitation from the impairment in his application or during hearing);  see also Thompson v. Astrue, 226 Fed. Appx. 617, 620 (8th Cir.2007) (holding that the ALJ did not err in failing to obtain the testimony of a VE  where the claimant failed to claim obesity as a disabling condition).

After thoroughly reviewing the hearing transcript, along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. See Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005).  Accordingly, the Court believes that the VE's testimony constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude her from performing her past relevant work as a delicatessen slicer and board assembler.  Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

-13-

**Conclusion**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and recommends affirming the decision of the ALJ. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. §636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

Dated this [17th] day of June, 2010.

*/s/ Erin L. Setser*
HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-14-